# ROCKINGHAM,

## JULY TERM, A. D. 1849.

---

## PAGE *v.* PAGE.

Certain heirs promised to " cut and haul out" to a certain place, annually, a stipulated quantity of hard wood, for the use of the widow entitled to dower in the estate, so long as she should give up to them the exclusive occupancy of the buildings of which she was dowable, and in full satisfaction of her claim as dowager, to cut wood upon the estate. She afterwards leased to one of the heirs the only part of the land assigned to her in dower on which wood of that quality grew; and after that made a contract with those who had purchased the buildings of the heirs, that she would not disturb them in their possession. She also, for one year, compounded for a sum of money with one who had agreed with the heirs to cut and haul the wood.—*Held*, that these acts did not impair her right under the contract with the heirs; that they were required by it to furnish the wood, whether it could be obtained on land assigned to her or not.

ASSUMPSIT, upon an agreement dated the 14th day of December, 1838, by which, in consideration that the plaintiff would remove from certain premises and permit the defendants to occupy them, the last named parties promised to cut and haul out for her, seven and one half cords of wood each year that she should so forbear to occupy the premises. The wood to be delivered on the 20th of December, each year, and to be in satisfaction of her right to wood from the estate of her late husband, the defendant's father.

The execution of the agreement by the parties was admitted. At the trial which was had upon the general

issue, it appeared that Benjamin Page, the father of the defendants named in said contract, died intestate, November 2, 1838; that in April following, the plaintiff, his widow, had dower assigned to her in the real estate of which he died seized, viz: in part from his homestead farm, and in the buildings referred to in said contract, which stood near, but not on, the dower land set off on said homestead, and in part from other land, called the Dame lot. On the land thus set off to the plaintiff as her dower, there was, at the time of making the contract declared on, wood sufficient to supply her with her reasonable firewood. She lived in the house referred to in the contract, until December 30, 1838, with Daniel Page, Jr., when she left the same, and has not occupied or had possession of it since.

It also appeared that on the 29th day of April, 1839, the heirs of Benjamin Page, deceased, conveyed part of the homestead place on which the buildings stood, and of which he died seized, to John York, "excepting from the covenants in said deed the portion of the buildings, and the privileges around them, which was assigned to Alice Page as her dower in the estate of said deceased." York, November 12, 1841, conveyed the same to one Hackett. The defendants, and York, and Hackett, respectively, while owning the land, delivered the wood as required by the contract, taking it from the land so set off as dower, up to and including December 20, 1843. During the above mentioned period the defendants, York and Hackett, respectively occupied the land and all the buildings. On the 20th day of December, 1844, the wood on that part of the Dame lot which was set off as the plaintiff's dower, had been exhausted—the wood hauled for the years aforesaid having been principally taken therefrom.

On the 30th day of September, 1843, the plaintiff, for a rent of $22, leased to the defendant Daniel Page, Jr., all that part of the farm assigned to her in dower, except the

Dame lot. Hackett having been informed of the execution of the lease, proposed to Elizabeth D. Carter, who was the agent of the plaintiff, to pay her five dollars as an equivalent for hauling the wood that year, which she agreed to accept, saying, however, that she should look to the defendants for the wood itself; and said sum was accordingly afterwards paid. Hackett, at this time, informed said Carter that the fire-wood on the dower land on the Dame place was exhausted, and the wood was spoken of as reserved for the plaintiff, and to be cut and hauled from the dower land. There were at this time from fifteen to twenty cords of hard wood on the dower land, on the homestead farm. The defendants also proved that in October, 1843, the plaintiff's agent called on one of the defendants, and told him that she had been called upon to repair the buildings, and that if she had to repair them she should take the buildings to herself; and requested him to find a tenant to occupy them. It did not appear, however, that the occupation of the buildings had actually been changed.

The plaintiff objected to the testimony of Hackett in relation to the agreement between the parties.

The defendants offered in evidence a written agreement, executed by Hackett, York and the plaintiff, February 22, 1845, witnessing " that the said Alice Page, in consideration of the covenant and agreement of said York and said Hackett, hereafter contained, does hereby covenant to and with the said York and Hackett, that said Alice will never enter or disturb the said Hackett in the possession of that part of the buildings and real estate, in Rochester, where said Hackett now lives, on account of her right of dower in the same, provided that said Hackett shall never call on her to pay or contribute anything for the repairs done or to be done on the buildings, and provided said Hackett or York shall pay to her, the said Alice, five dollars each year, on or before the 20th day of December, annually, so

long as said York is obliged by his, said York's, contract with Daniel Page, Jr., to cut from said Alice's thirds and haul out to the road, in Rochester, seven and a half cords of merchantable hard wood, annually, by the 20th of December, said thirds from which said wood was to be cut and hauled being on the homestead farm of the late Benjamin Page, deceased, and the Dame lot, so called, near said homestead, and no where else; and the said York does hereby covenant with the said Alice that the said Hackett or York will pay the said five dollars to her, annually, as aforesaid, so long as he, the said York, shall be obliged to said Daniel Page, Jr., as aforesaid, to cut and haul said wood; and the said York does hereby covenant with the said Hackett, that as long as the said Hackett shall pay to said Alice five dollars per year, as aforesaid, and shall not call on her to contribute for repairs as aforesaid, he, the said York, will hold him, the said Hackett, harmless from all interruption and incumbrance from said Alice's right of dower in said buildings, where said Hackett now lives; and provided, farther, that said Hackett shall be protected in the quiet enjoyment of said buildings, without payment of said five dollars per year, whenever said York shall be exonerated from his, said York's, obligation to Daniel Page, Jr., to cut and haul out said seven and a half cords of wood, annually as aforesaid; and the said Hackett does hereby covenant with the said Alice, that in consideration of her covenant, above written, he will never call on her to contribute to pay for repairs on said buildings where he now lives; and the said Hackett does covenant with the said York that he will annually pay the said Alice five dollars on or before the 20th of December in each year, so long as said York shall be obliged to said Daniel Page, Jr., to cut and haul out the said seven and a half cords of wood as aforesaid."

A verdict was taken, by consent, for the plaintiff, for $27.50, subject to be set aside and a general verdict entered

for the defendants, if the Superior Court should be of opinion that the plaintiff is not entitled to maintain her action.

*Stickney*, for the plaintiff.

*Bell*, for the defendants.

GILCHRIST, C. J. The plaintiff, the widow of Benjamin Page, was dowable of his lands, and the defendants were his heirs. On the 14th day of December, 1838, and before dower had been assigned, the parties made the agreement on which this action has been brought. It is, that in consideration that the plaintiff would give up the occupancy of the buildings on the estate, the defendants would, on the 20th of December of each year that she should so forbear to occupy them, cut and haul out for her to a certain place seven and a half cords of hard wood. And this wood she agreed to receive in full satisfaction of her claim for wood from the estate.

She absented herself from the buildings accordingly, and had forborne to occupy them until the commencement of the action. No wood was delivered in the years 1844 and 1845.

In April, 1839, dower was assigned to the plaintiff in the buildings referred to in the agreement, in a parcel of the homestead, and in the Dame lot.

The consideration of the defendant's undertaking is very clearly indicated in the contract. It is the surrender of the buildings, and of all further claim for fire-wood, as dowager of the estate.

A question is made as to the precise duty which the defendants assumed, in undertaking to cut and haul to the place named the seven and a half cords of wood.

The defendants say that by the hard wood described in the contract, was intended such hard wood only as should

be yielded by the land to be assigned to her in dower; that upon part of this land the hard wood was exhausted before December, 1844, and the remainder of the land had been disposed of by her prior to that time, so that she had no land upon which she could authorize any one to enter and cut the wood.

Or, since the disposition which the plaintiff had made of the last named portion of land, consisted only in leasing it to one of the defendants, if that act did not amount to a relinquishment of her claim for the wood, she had compounded for the cutting and drawing it, by the transaction with York and Hackett, on the 22d day of February, 1845, and by the earlier transaction between her agent, Carter, and Hackett; and that the defendants have been thereby exonerated.

But the contract does not, in its terms, limit the duty of the defendants to cutting and hauling the hard wood upon the land to be assigned in dower; and it was made when it was not certain that there would be any hard wood upon the land so to be assigned. The consideration was not merely her right to reasonable allowance of wood upon such land, but her surrender of a right to occupy some portion of the buildings. It cannot be said, upon the reading of the contract, that the labor of cutting and drawing the wood was the compensation for the occupation of the buildings, and the wood itself an equivalent for her right to cut fuel upon the estate. Both of these her claims were compounded, and formed together the consideration for the defendants' promise. This promise was to deliver a certain quantity of hard wood, annually, on the 20th of December, without reference to a question whether her reasonable requirements, as dowager, might exceed or fall short of that quantity, or whether or not wood of that quality might be found upon the land assigned her.

There is, therefore, no sufficient ground for holding that

the lease made by the plaintiff to one of the defendants of the land assigned to her, in any way affected the contract concerning the wood. It seems in no way connected with it. The defendants were as well able to execute their part of it after as before the lease; and the consideration on which their undertaking was founded existed as well after as before the lease; for the defendants enjoyed the buildings which she had vacated, and in parting with that particular portion of her land it by no means appears that she precluded herself from the enjoyment of the dowager's privilege of cutting her wood from the other portion of the land assigned to her—the relinquishment of which right, with the relinquishment of the buildings, formed from year to year the consideration of the defendants' undertaking.

By the terms of the contract which is the subject of the suit, the plaintiff was not precluded from returning when she pleased, and resuming the occupancy of the buildings. They had been sold to Hackett, subject to that incumbrance. By the tripartite agreement of the 22d of February, 1845, she covenanted with Hackett and York, not to exert that right to their disturbance; and they agree not to call on her to aid in repairing the buildings, and also to pay her five dollars a year so long as York's contract with Page shall require him to cut and draw from her land seven and a half cords of hard wood annually.

If we are to suppose that this period was the term of her life, and the contract referred to an undertaking of York upon purchasing the buildings subject to her rights, to assume the obligations into which the defendants had entered to supply the wood, it only describes the extent of York's undertaking, and tends in no manner whatever to define that of these defendants. There is nothing in the tripartite agreement by which the plaintiff assents to any such construction of the agreement in suit for which the defendants contend.

Neither is there anything in the agreement of the 22d of February by which the plaintiff, in terms or by reasonable implication, dispenses with the defendants' undertaking; nor is anything secured to her which appears on the face of the writing to be a substitute, wholly or in part, for that which she is entitled to by the contract with the defendants. The sum of $5 which Hackett and York agree to pay to her annually, is upon considerations distinctly expressed in the indentures.

The arrangement that was made through the intervention of Carter was no more than this: Hackett was bound to cut and haul the wood by his agreement with Daniel Page, Jr., and agreed with the plaintiff to receive $5 instead of that service, or a part of it. This was an arrangement which she certainly might well have made, without sacrifice of the right for which she contends; and she did not intend to waive it, as clearly appears by the evidence.

The exception to the evidence must, therefore, be overruled, and there must be

*Judgment on the verdict.*